UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Docket No.: 22-cr-10205-NMG |
| | ) |
| ALFEU BARBOSA | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Now comes Alfeu Barbosa, and submits the following sentencing memorandum in support of his request for a sentence of seventy-eight (78) months incarceration followed by two (2) years of supervised release. As described more fully below, seventy-eight (78) months of incarceration is sufficient but not greater than necessary to achieve the goals of sentencing, pursuant to 18 U.S.C. § 3553.

1. PERSONAL HISTORY

Mr. Barbosa was born in Cape Verde. P.S.R. ¶ 70. His mother passed away after a sudden heart attack when he was very young. *Id.* Mr. Barbosa lived with extended family for several years before coming to the United States when he was nine years old to live with his father. P.S.R. ¶ 71. His relationship with his father was very tumultuous for several reasons. Mr. Barbosa did not have a previous significant relationship with his father, his father was strictly religious with strict rules about church and what types of foods he was permitted to eat, and his father beat him. P.S.R. ¶ 71. His father's abuse led him to run away from home as a child and become homeless. *Id.* His relationship with his father has recently improved, with Mr. Barbosa attributing the physical abuse he suffered to cultural differences between Cape Verde

1

and the United States. *Id.* However, he still has symptoms of post traumatic stress disorder due to the abuse he suffered as a child and has had a difficult time while incarcerated because fighting triggers his mental health symptoms. P.S.R. ¶ 78. Mr. Barbosa's father wrote a letter of support for his son, saying that they have worked hard to heal their relationship. *See* Exhibit A (letters of support) at 3.

Mr. Barbosa is a legal permanent resident of the United States. P.S.R. at 3. He will almost certainly be deported following his sentence in this case. See *Commonwealth v. Barbosa*, 97 Mass. App. Ct. 1102, 140 N.E. 3d 951 (2020) (describing forms of relief that he will not be eligible for, given similar convictions). Mr. Barbosa does not have a relationship with any family members living in Cape Verde and will have no place to stay or means of survival there. *See* Exhibit A. As a young child, Mr. Barbosa had a close relationship with his maternal grandparents. P.S.R. ¶ 70. Unfortunately, his grandmother passed away in 2018 and his grandfather passed away last year while Mr. Barbosa was in custody. *See* Exhibit A at 2. Mr. Barbosa has three sisters, one brother, a father, a step mother, and significant extended family who live in Massachusetts. Many family members have written letters of support, describing Mr. Barbosa as a quiet child who suffered a difficult childhood following the loss of his mother. *See* Exhibit A.

2. SENTENCING GUIDELINES

The defendant agrees with the Probation Department that the total offense level is 30. P.S.R. ¶ 38. The defendant disagrees with the Probation Department's calculation of Mr. Barbosa's criminal history category because the 2016 conviction from Quincy District Court (1656CR1999) was vacated on March 5, 2020. *See Commonwealth v. Barbosa*, 97 Mass. App.

Ct. 1102, 140 N.E. 3d 951 (2020); Exhibit B (docket 1656CR1999 docket). Vacated convictions do not add criminal history points. U.S.S.G. 4A1.2, note 6. In 1656CR1999, Mr. Barbosa's motion for new trial was denied, the decision was reversed on appeal, the case was remanded to the district court, and then the motion for new trial was allowed on March 5, 2020. *See* Exhibit B, C (Quincy District Court decision). Mr. Barbosa has three criminal history points, resulting in a criminal history category of II. *But see* P.S.R. ¶ 53 (assigning 6 points, including 3 points for the vacated conviction). Mr. Barbosa's sentencing guidelines range for a total offense level of 30 and a criminal history category II is 108-135 months.

    3.   REQUEST FOR DEPARTURE FOR TIME IN IMMIGRATION CUSTODY, PROLONGED TIME SPENT IN B.O.P., AND CONDITIONS OF CONFINEMENT

Mr. Barbosa had little choice in this case but to go to trial. Had he pleaded guilty, his sentencing range would have been 78-97 months. Unfortunately, Mr. Barbosa's immigration situation put him in the difficult position of knowing he would be deported to a place he knows no one and has no resources. Mr. Barbosa is requesting a variance to seventy-eight (78) months incarceration because such a sentence is sufficient given the additional time he will spend in official detention following his release, the more difficult conditions of confinement that he will experience, and the longer period of time he will spend in a Bureau of Prisons facility than similarly-situated citizens because of non-citizens ineligibility to home confinement or residential re-entry.

A departure is appropriate where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.S. § 3553. In addition, when this Court determines what sentence is sufficient, but not

3

greater than necessary, collateral consequences should be considered to determine how much incarceration is sufficient to satisfy the goals of sentencing. *See United States v. Bakeas*, 987 F. Supp. 44, 49 (D. Mass. 1997) (departing downward where defendant's alienage crucially changed his conditions of confinement). A departure is justified in Mr. Barbosa's case because (1) he anticipates spending addition time in official detention in Immigration custody following the expiration of his sentence, (2) he will spend a longer period of time in a B.O.P. facility than a citizen because he is ineligible for certain programming and pre-release custody, and (3) his conditions of confinement will be more difficult.

     First, a departure is warranted because Mr. Barbosa will be transferred to immigration custody after his sentence and placed in official detention for many months after his sentence expires and prior to deportation. He is not entitled to jail credit for time spent in official detention following his sentence. *See* 18 U.S.C. § 3585(b). Because this time would otherwise be considered "dead time," his sentence should be adjusted to reflect the several months he will spend in custody after his sentence. *See United States v. Cisneros*, No. 02-CR-10044-DPW (departing to assure defendant would get credit for time in immigration detention); *United States v. Darmund*, No. 01-CR-30036-MAP (same); *United States v. Karukin*, No. 98-10253-RCL (granting adjustment based on likely time required to execute deportation).

     Additionally, Mr. Barbosa's conditions of confinement will be more harsh than a similarly-situated citizen because he will not be eligible for certain programming. *See Koon v. United States* 518 U.S. 81 (1996) (upholding downward departure based on condition of confinement related to defendant's susceptibility to abuse). He will also spend more time in a B.O.P. facility than a similarly situated citizen because he is not eligible for transfer to home confinement or a residential reentry center. Mr. Barbosa's status as a legal permanent resident

means that he is not eligible for the residential drug treatment program, not eligible for home confinement at the end of his sentence, and not eligible for transfer to a residential reentry center the last year of his sentence. B.O.P. Program Statements 5330.11; 7310.04. He will also be given a public safety factor as a deportable alien, just as a person would receive if they had a history of escape, that will make him ineligible for transfer to a camp facility. B.O.P. Program Statement 5100.08. Non-citizens also may not work outside the perimeter of a B.O.P. facility, obtain furlough, and are deprioritized for literacy and language education. B.O.P. Program Statements 5280.09, 5350.28; 18 U.S.C. § 3624(f)(4) (exempting non-citizens from literacy requirement).

Finally, Mr. Barbosa faces the additional collateral consequence of deportation to a country where he has no family to help him and he hasn't been for 17 years. When considering whether the punishment is sufficient, but not greater than necessary, the defendant asks this Court to consider the harsh situation[1] he will face in Cape Verde and how that impacts the power of the sentence under 18 U.S.C.S. § 3553.

4. CONCLUSION

For all the reasons stated above, the defendant requests a seventy-eight (78) month sentence followed by two (2) years of supervised release.

Respectfully submitted,

July 12, 2024                ALFEU BARBOSA

By his Attorney,
*/s/ Alyssa Hackett*

---

[1] *RETURNED: Portraits of People Deported to Brava*, Cape Verde, University of Oxford, Law Blogs, available online at: https://blogs.law.ox.ac.uk/research-subject-groups/centre-criminology/centreborder-criminologies/blog/2015/03/returned.

Alyssa Hackett, *she/her* B.B.O. 676880
Law Office of Alyssa T. Hackett
55 Union Street, 3rd Flr., Boston, MA 02108
ahackett@hackett-law.com

## **CERTIFICATE OF SERVCE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 12, 2024.                  */s/ Alyssa Hackett*

Alyssa Hackett